Michael A. Amon (SBN 226221)
amon@fr.com
FISH & RICHARDSON P.C.
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: (213) 533-4240/Fax: (877) 417-2378

Jonathan E. Singer (SBN 187908)
singer@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Tel: (858) 678-5070/Fax: (858) 678-5099

John M. Farrell (SBN 99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Tel: (858) 678-5070/Fax: (858) 678-5099

Attorneys for Plaintiffs
ALLERGAN, INC. and ALLERGAN SALES, LLC
(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ALLERGAN, INC., ALLERGAN SALES, LLC,<br><br>                Plaintiffs,<br><br>    v.<br><br>FERRUM FERRO CAPITAL, LLC;<br>KEVIN BARNES,<br><br>                Defendants. | Case No.<br><br>**COMPLAINT FOR CIVIL EXTORTION, MALICIOUS PROSECUTION, AND UNFAIR BUSINESS PRACTICES ARISING FROM U.S. PATENT LAWS**<br><br>**JURY TRIAL DEMANDED** |

1   Plaintiffs Allergan, Inc. and Allergan Sales, LLC (collectively, "Allergan"), by
2 their attorneys, alleges the following claims against Defendants Ferrum Ferro Capital,
3 LLC ("FFC") and Kevin Barnes ("Barnes") (collectively "Defendants"):

**NATURE OF THE ACTION**

5   1.   This is a civil action arising out of Defendants' attempt to extort
6 Allergan by misusing the Inter Partes Review ("IPR") process established by the
7 America Invents Act ("AIA"), H.R. 1249, enacted to reform 35 U.S.C. §§ 1 *et seq.*
8 Defendants' conduct raises substantial issues related to the misuse of the patent
9 system and the processes established by the AIA, and constitutes attempted civil
10 extortion and malicious prosecution under California law in addition to violating
11 California's Unfair Competition Law codified at California Bus. & Prof. Code §§
12 17200 *et seq.*

**THE PARTIES**

14   2.   Allergan, Inc. is a corporation organized and existing under the laws of
15 the State of Delaware, with a principal place of business at 2525 Dupont Drive,
16 Irvine, California 92612.

17   3.   Allergan Sales, LLC is a limited liability company organized and
18 existing under the laws of the State of Delaware, with a principal place of business at
19 2525 Dupont Drive, Irvine, California 92612.

20   4.   On information and belief, FFC is a Delaware limited liability company
21 without any principal place of business.  On information and belief, FFC maintains a
22 mail drop box at 717 N. Union Street, #78, Wilmington, Delaware 19805.

23   5.   On information and belief, Kevin Barnes in a citizen of the state of New
24 York, who resides at 515 W. 59th Street, Apartment 19A, New York, New York
25 10019.

**JURISDICTION AND VENUE**

6.    This Court has original jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §§ 1331, 1338, or 1367.  As described in detail below, this complaint necessarily raises issues related to Defendants' misuse of the patent laws of the United States of America, and the processes established by the AIA, which amended the patent laws of the United States.

7.    FFC has filed an objectively baseless IPR petition for the express purpose of monetizing the petition, including by attempting to extort compensation from Allergan.  The objective baselessness of FFC's IPR petition necessarily raises federal issues that are actually disputed and substantial.  Moreover, the issues raised by this complaint are not limited to the facts of or parties involved in this case, but rather apply to many other AIA petitioners attempting similar extortionate schemes. Indeed, the behavior complained of herein—the use of the IPR process in an effort to extract compensation from patent-holders—has been the subject of extensive debate in Congress and the national press, as evidenced by the attached recent op-ed in the Wall Street Journal.  *See* Ex. A, attached.  This Court's exercise of jurisdiction over these important and far-reaching federal issues will not disrupt the balance struck by Congress between the federal and state courts.

8.    Given the importance and potential impact of this dispute on the federal system and the laws governing the AIA, this Court can and should exercise jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

9.    This Court has personal jurisdiction over FFC because FFC specifically reached out to Allergan, which is resident in this Judicial District, for the purposes of extorting Allergan under the guise of settlement of an IPR petition authorized under the AIA.  FFC has hired counsel based in this Judicial District for the purpose of aiding in its efforts to extort Allergan under the guise of settlement from Allergan. The harm caused by FFC and suffered by Allergan has occurred in this district and was directed at this district by FFC.   In addition, through its conduct, FFC has sought

COMPLAINT FOR CIVIL EXTORTION AND UNFAIR BUSINESS PRACTICES ARISING FROM U.S. PATENT LAWS
Case No.

1   to allegedly do business in this Judicial District and to avail itself of the laws in this
2   Judicial District.

3       10.   This Court has personal jurisdiction over Kevin Barnes because Mr.
4   Barnes, acting through FFC, specifically reached out to Allergan, which is resident in
5   this Judicial District, for the purposes of extorting Allergan under the guise of
6   settlement of an IPR petition authorized under the AIA.  Mr. Barnes, through FFC,
7   has hired counsel based in this Judicial District for the purpose of aiding in its efforts
8   to extort Allergan under the guise of settlement from Allergan.  The harm caused by
9   Mr. Barnes and suffered by Allergan has occurred in this district and was directed at
10  this district by Mr. Barnes.   In addition, Mr. Barnes, through FFC, has sought to
11  allegedly do business in this Judicial District and to avail himself of the laws of the
12  state in this Judicial District.

13      11.   Allergan's complaint originates from Defendants' attempts to extort
14  Allergan under the guise of settlement, and Defendants' associated conduct and
15  activities in this Judicial District.  As such, this Court has specific personal
16  jurisdiction over Defendants.

17      12.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and/or
18  1391(c).

19  **FACTUAL ALLEGATIONS REGARDING ALLERGAN'S INNOVATIVE**
20  **TREATMENT FOR GLAUCOMA AND OCULAR HYPERTENSION**

21      13.   Allergan incorporates and realleges Paragraphs 1-12 of this Complaint as
22  if repeated verbatim in this Paragraph.

23      14.   Allergan is one of the world's leading and most innovative
24  pharmaceutical companies.   One of the specialties of Allergan is research and
25  development of products for treating diseases of the eye.

26      15.   Glaucoma is an incurable disease of the eye that damages the optic nerve
27  over time, resulting in vision loss, and often, blindness.  It afflicts approximately 70
28  million patients worldwide.    While the cause of glaucoma is unknown, a symptom

COMPLAINT FOR CIVIL EXTORTION AND UNFAIR BUSINESS PRACTICES ARISING FROM U.S. PATENT LAWS
Case No.

of the disease is a dramatic escalation of the pressure inside the eye, known as intraocular pressure.   Elevated intraocular pressure is known as ocular hypertension.

16.   While incurable, the elevated intraocular pressure found in glaucoma and ocular hypertension patients can be treated with eye drops to control pressure, slowing the progression of the diseases.  For many patients, one type of drop a day is not enough—these patients must administer multiple medications, many of which require multiple doses taken at different times of day.

17.   In part to solve this problem, Allergan developed COMBIGAN®, which is a combination of brimonidine and timolol for "topical ophthalmic use" in treating patients suffering from glaucoma and/or ocular hypertension.  The development of COMBIGAN® required the investment of tens of millions of dollars by Allergan and thousands of hours in research and development.

18.   Allergan is the holder of an approved New Drug Application ("NDA") No. 21-398 for brimonidine tartrate/timolol maleate ophthalmic solution 0.2%/0.5%, sold under the COMBIGAN® trademark.

19.   COMBIGAN® has proven to be a significant improvement for treating glaucoma and ocular hypertension due, in part, to its having comparable efficacy to brimonidine and timolol administered separately and to its superior safety profile.

20.   NDA No. 21-398 for COMBIGAN® is associated with at least six patents duly issued to Chin-Ming Chang, Gary J. Beck, Cynthia C. Pratt, and Amy L. Batoosingh , including U.S. Patent Nos. 7,030,149 ("the '149 patent"), 7,320,976, 7,642,258, 8,133,890, 8,354,409, and 8,748,425.

21.   Allergan, as assignee, owns the entire right, title, and interest in each of these six patents, including the '149 patent.

22.   COMBIGAN® or approved methods of using COMBIGAN® are covered by at least one claim of each of the six patents listed above, including the '149 patent.

23.   Because of its success in the marketplace, numerous generic

pharmaceutical companies, including Sandoz, Inc., Hi-Tech Pharmacal Co., Inc., Alcon Laboratories, Inc., Falcon Pharmaceuticals, Ltd., Apotex, Inc., Apotex, Corporation, and Watson Laboratories, Inc. (collectively "the Competitors" or "Allergan's Competitors"), have filed Abbreviated New Drug Applications ("ANDA") with the United States Food and Drug Administration ("FDA"), seeking approval to market generic versions of COMBIGAN® before the expiration of Allergan's patents covering COMBIGAN®, including the '149 patent.   These ANDAs were filed pursuant to the Hatch-Waxman Act, the statute that governs generic drug approvals.

24.    As contemplated by the Hatch-Waxman Act, Allergan sued the Competitors for a judgment that the Competitors' generic formulations disclosed in their various ANDA applications infringed Allergan's duly issued patents, including the '149 patent.

25.    In response, the Competitors sought declaratory judgment that Allergan's patents, including the '149 patent, were invalid.

26.    Included among the validity challenges raised by the Competitors were claims that the '149 patent was invalid as obvious in light of certain prior art, including the DeSantis, Timmermans, Stewart, and Larsson references.

27.    The cases between Allergan and the Competitors were tried to the bench in the United States District Court for the Eastern District of Texas in August 2011, the Honorable T. John Ward presiding.  In support of their validity challenges on the '149 patent, the Competitors introduced lengthy expert witness testimony at trial, including from a treating ophthalmologist and an ophthalmic formulator.   Those experts addressed the DeSantis, Timmermans, Stewart, and Larsson references.

28.    In August 2011, the district court entered judgment in favor of Allergan on the Competitors' validity challenges to the '149 patent, rejecting the Competitors' arguments and testimony.   The district court rejected defendants' arguments over each of the DeSantis, Timmermans, Stewart, and Larsson references.

29.    On May 1, 2013, the United States Court of Appeals for the Federal Circuit affirmed the district court's judgment rejecting the Competitors' validity challenge to the '149 patent.   In September of that same year, the Court of Appeals denied a petition for rehearing and rehearing *en banc*, and issued its mandate.   The United States Supreme Court denied certiorari in 2014.  As a result of that litigation, the Competitors are enjoined from launching their generic versions of COMBIGAN® until April 2022.

**FERRUM FERRO CAPITAL'S FALSE AND
EXTORTIONATE CONDUCT**

30.    Allergan incorporates and re-alleges Paragraphs 1-29 of this Complaint as if repeated verbatim in this Paragraph.

31.    On information and belief, FFC was formed as a Delaware Limited Liability Company on November 3, 2014.

32.    On information and belief, FFC is a privately held venture fund.

33.    On information and belief, Kevin Barnes is one of FFC's founders.

34.    On information and belief, FFC has no principal place of business, maintaining merely a mail drop box located at 717 N. Union Street, #78, Wilmington, Delaware 19805.  A photo of that location is available at https://maps.google.com/:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20    35.    Consistent with its "mail drop box" "place of business," FFC's website,

21  http://www.ferrumferro.com, is a shell, with no information available on it about any

22  of FFC's supposed activities.  A print-out of all of the pages of FFC's website is

23  attached hereto as Exhibit B.

24    36.    Indeed, FFC's website is almost identical to the website of another

25  venture fund owned by Mr. Barnes, which he has named Hyacinth Sloop Capital,

26  LLC.  A print-out of all of the pages of Hyacinth Sloop Capital's website,

27  http://www.hyacinthsloop.com, is attached hereto as Exhibit C.

28

37.     On information and belief, FFC has no facilities in which to conduct research and development to create a generic formulation of Allergan's COMBIGAN®, or any other pharmaceutical drug.

38.     On information and belief, FFC has not financed any research and development activities to create a generic formulation of Allergan's COMBIGAN®, or any other pharmaceutical drug.

39.     On information and belief, FFC has hired no scientists or other personnel capable of performing any research and development activities to create a generic formulation of Allergan's COMBIGAN®, or any other pharmaceutical drug.

40.     On information and belief, FFC has hired no regulatory or other personnel necessary to prepare, submit and prosecute an ANDA application for any generic drug with the FDA.

41.     On March 9, 2015, FFC sent a letter to Allergan.  A copy of that letter is attached as Exhibit D.

42.     FFC's March 9, 2015 letter falsely represented to Allergan that FFC was prepared to "seek [Federal Food and Drug Administration ("FDA")] approval via a Paragraph III ANDA filing to produce and market a generic brimonidine tartrate/timolol maleate ophthalmic solution with [an unnamed] Contract Manufacturing Partner ("CMP")."  Ex. D at 2.

43.     Attached to the March 9, 2015 letter, FFC included an incomplete "proposed FDA filing" for generic brimonidine tartrate/timolol maleate ophthalmic solution, attached hereto as Exhibit E.  FFC's "proposed ANDA filing" is clearly a sham.

44.     In the sham "proposed FDA filing," FFC named its fictitious generic brimonidine tartrate/timolol maleate ophthalmic solution "Combivious," apparently as some kind of play on the words "COMBIGAN®" and "obvious."  The fictitious ANDA filing further lists its date of submission as "03/XX/2015."  Moreover, FFC included only the first page of the three-page FDA application to market an

abbreviated new drug.  Notably, FFC omitted the certification acknowledgment and the signature page of the form from what it sent Allergan.

45.     Also attached to the March 9, 2015 letter was an IPR petition that FFC filed with the United States Patent and Trademark Office ("PTO") on March 9, 2015 challenging the validity of Allergan's '149 patent.  That IPR petition is attached hereto as Exhibit F.

46.     IPR is a trial proceeding established by Congress and the President when they enacted into law the AIA, which amended 35 U.S.C. §§ 1 *et seq*.  IPRs are conducted before the Patent Trial and Appeal Board ("PTAB") of the PTO whereby a third party may seek a review of the patentability of one or more claims in a patent.

47.     The third party filer has the option to withdraw its IPR petition.

48.     FFC's IPR petition is based on the same prior art as that previously argued by Allergan's Competitors in the prior U.S. District Court and Court of Appeals litigation, namely the DeSantis, Timmermans, Stewart, and Larsson references.  FFC's IPR petition further raises the identical invalidity arguments over those references—obviousness—that the District Court and the Federal Circuit already rejected.

49.     Moreover, rather than accept the majority Federal Circuit opinion affirming the district court's judgment on the '149 patent, FFC's IPR petition instead purports to rely on the dissenting opinion of Judge Dyk as a basis for asserting the '149 patent is invalid.  In so doing, the IPR petition significantly and falsely characterizes what the dissent said about claim construction.

50.     FFC's March 9, 2015 letter explicitly threatens Allergan with its IPR petition as follows:  "[FFC] is confident that at a minimum, the IPR petition for the '149 patent presents a significant and terminal threat to Allergan's exclusive rights to distribute Combigan."  Ex. D at 2.

51.     In an apparent effort to place additional pressure on Allergan, FFC's March 9, 2015 letter highlighted the fact that "upon institution of the IPR by the

PTAB, formerly time-barred defendants, such as [Allergan's Competitors], will have the opportunity to file petitions of their own in the ongoing invalidation proceedings." *Id.*

52.     FFC's letter further stated that "Allergan should be mindful that FFC's IPR could result in [Allergan's Competitors] joining the fast-track challenge of the '149 patent." *Id.*

53.     In the concluding part of its letter, FFC attempts to extract compensation from Allergan by stating that it "firmly believes that a company such as Allergan should be given a single opportunity to support FFC's core social and investment interests before other time-barred producers are able to file for joinder in the '149 Patent IPR, and before FFC files additional IPR petitions against the COMBIGAN® patents and proceeds with a Paragraph III filing.  As such, FFC is amenable to discussing an immediate and confidential settlement with Allergan." *Id.* at 3.

54.     FFC's letter set a deadline of March 18, 2015 for Allergan to contact FFC to discuss this "single opportunity" to "support" FFC's "core social and investment interests" in settlement of FFC's IPR petition.  *Id.*

55.     On March 18, 2015, Allergan contacted FFC to obtain further information regarding FFC's demands.

56.     On March 18, 2015, FFC, including Mr. Barnes, informed Allergan that it would not disclose its demands unless Allergan first signed a non-disclosure agreement.  The draft non-disclosure agreement initially provided by FFC, in addition to requiring confidentiality of settlement discussions, contained a term that barred the use of anything learned under the non-disclosure agreement as a basis for bringing an action against Mr. Barnes or FFC.  Allergan refused to sign such an NDA, but ultimately did enter into a modified NDA to speak to Mr. Barnes confidentially.

57.     While these activities were ongoing, Mr. Barnes—FFC's founder—publicly stated that he sees "multiple pathways to monetization" of the IPR filing against the '149 patent.   That statement is attached hereto as Exhibit G, page 4.

58.     Indeed, Allergan has learned that Hyacinth Sloop Capital, LLC, Mr. Barnes's other known entity, has threatened to file an IPR challenging the validity of another company's patent that covers a different drug.  Allergan suspects that Hyacinth Sloop and Mr. Barnes are similarly seeking to extort that other pharmaceutical company.

59.     Defendants' (and third parties') extortionate tactics necessarily raise questions regarding the scope and reach of the IPR procedure for challenging the validity of patents, involving substantial questions of patent law.

## COUNT I – ATTEMPTED CIVIL EXTORTION
## UNDER CALIFORNIA PENAL CODE §§ 518 *ET SEQ.*

60.     Allergan incorporates and re-alleges Paragraphs 1-59 of this Complaint as if repeated verbatim in this Paragraph.

61.     Defendants' IPR petition regarding the '149 patent is objectively baseless and filed for an improper purpose.   The IPR petition is based on the same prior art and the same grounds already rejected by the District Court and the Federal Circuit in the litigation between Allergan and the Competitors.  Compounding the matter, the IPR relies on a false characterization of the Federal Circuit opinion.

62.     Defendants did not have and still do not have a reasonable basis for filing the IPR petition against the '149 patent based on the same prior art and the same grounds that were already rejected by the U.S. District Court and the Federal Circuit in the litigation between Allergan and the Competitors.

63.     Defendants' reason for filing the IPR petition is in an attempt to extort Allergan through the guise of providing Allergan a "single opportunity" to "support" FFC's "core social and investment interests" in settlement of the IPR.

64.     As described above, Defendants sent to Allergan a letter expressly threatening Allergan if Allergan did not enter into an immediate and confidential settlement regarding the IPR petition.  Because Defendants' threats against the '149 patent are objectively baseless, Defendants' conduct constitutes attempted extortion

1    under California Penal Code §§ 519, 523 and 524, giving rise to this civil action.

2        65.    Defendants' unlawful purpose in filing the IPR petition against the '149

3    patent and sending their letter to Allergan is further shown by Defendants' fraudulent

4    claims to be prepared to file an ANDA for a generic brimonidine/timolol combination

5    product, and by proposing a name for it, "Combivious," that is plainly a sham.

6        66.    Defendants' unlawful purpose and their consciousness of the same is

7    also manifest, by among other things, FFC's initial refusal to provide any settlement

8    terms absent Allergan signing a non-disclosure agreement that forbade Allergan from

9    using any information learned in settlement talks as a grounds for bringing a lawsuit

10   against Defendants.

11       67.    Further manifestation of Defendants' unlawful purpose and

12   consciousness of the same is demonstrated by Mr. Barnes' admission that there are

13   "multiple pathways to monetiz[e]" the IPR petition related to Allergan's '149 patent.

14       68.    Further manifestation of Defendants' unlawful purpose and

15   consciousness of the same is demonstrated by Defendants' attempts to intimidate

16   Allergan into settling quickly by threatening that "upon institution of the IPR by the

17   PTAB, formerly time-barred defendants, such as [Allergan's Competitors], will have

18   the opportunity to file petitions of their own in the ongoing invalidation proceedings."

19       69.    Defendants' "settlement" offer is an attempt by FFC to use the threat of

20   an objectively baseless IPR petition and fake ANDA filing to extort Allergan.

21       70.    Defendants have improperly used the IPR process because Defendants'

22   statements and actions reveal that they do not have a genuine desire to proceed with

23   the IPR or to invalidate Allergan's '149 patent, but rather used the IPR process in an

24   effort to extort Allergan as Defendants knew that they could withdraw their IPR

25   petition if Allergan succumbed to their demand.

26       71.    Defendants have improperly used the FDA's ANDA process because

27   Defendants do not have a desire or intent to proceed with a generic brimonidine

28   tartrate/timolol maleate ophthalmic solution, but simply used the false "proposed

FDA filing" to further Defendants' efforts to extort Allergan as Defendants never actually formulated or filed for a generic solution.

72.     Defendants' activities constitute attempted civil extortion under California law and are contrary to public policy.

73.     As a proximate cause of Defendants' actions, Allergan has suffered disruption to its business, loss of productivity, loss of business goodwill, substantial litigation expense, additional operational expense, and other damages in an amount to be proven at trial, but in any event in excess of $100,000.

**COUNT II – UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 _ET SEQ._**

74.     Allergan incorporates and realleges Paragraphs 1-73 of this Complaint as if repeated verbatim in this Paragraph.

75.     Defendants' conduct described herein constitutes unfair, unlawful and/or fraudulent business acts or practices under California Business and Professions Code. §§ 17200 _et seq._, including but not limited to:

a. Creating a limited liability company with no offices, and only a mail drop box for the purpose of attempting to extort Allergan;

b. Preparing a false "proposed FDA filing" for a hypothetical generic brimonidine tartrate/timolol maleate ophthalmic solution in furtherance of Defendants' attempts to extort Allergan through the guise of a settlement of the IPR proceeding;

c. Falsely representing to Allergan that Defendants were prepared to "seek FDA approval via a Paragraph III ANDA filing to produce and market a generic brimonidine tartrate/timolol maleate ophthalmic solution with [an unnamed] Contract Manufacturing Partner ("CMP")";

d. Filing an objectively baseless IPR petition for the unlawful purpose of extorting Allergan; and

e. Attempting to intimidate Allergan into settling quickly by threatening

that "upon institution of the IPR by the PTAB, formerly time-barred
defendants, such as [Allergan's Competitors], will have the opportunity
to file petitions of their own in the ongoing invalidation proceedings."

76.     As a proximate cause of Defendants' actions, Allergan has suffered
disruption to its business, loss of productivity, loss of business goodwill, substantial
litigation expense, additional operational expense, and other damages in an amount to
be proven at trial, but in any event in excess of $100,000.

## COUNT III – MALICIOUS PROSECUTION UNDER CALIFORNIA LAW

77.     Allergan incorporates and realleges Paragraphs 1-76 of this Complaint as
if repeated verbatim in this Paragraph.

78.     Defendants' conduct in filing the IPR petition constitutes malicious
prosecution under California law by, among other things:

    a.  Creating a limited liability company with no offices, and only a mail
drop box for the purpose of attempting to extort Allergan;

    b.  Filing an objectively baseless IPR petition for unlawful purpose of
extorting Allergan;

    c.  Preparing a false "proposed FDA filing" for a hypothetical generic
brimonidine tartrate/timolol maleate ophthalmic solution in furtherance
of Defendants' attempts to extort Allergan through the guise of a
settlement of the IPR proceeding;

    d.  Falsely representing to Allergan that Defendants were prepared to "seek
FDA approval via a Paragraph III ANDA filing to produce and market a
generic brimonidine tartrate/timolol maleate ophthalmic solution with
[an unnamed] Contract Manufacturing Partner ("CMP")" in furtherance
of Defendants' attempts to extort Allergan through the guise of a
settlement of the IPR proceedings; and

    e.  Furthering their extortionate acts by attempting to intimidate Allergan
into settling quickly with threats that "upon institution of the IPR by the

14

PTAB, formerly time-barred defendants, such as [Allergan's Competitors], will have the opportunity to file petitions of their own in the ongoing invalidation proceedings."

79.     As a proximate and substantial cause of Defendants' actions, including the filing and maintenance of an objectively baseless IPR petition, Allergan has suffered disruption to its business, loss of productivity, loss of business goodwill, substantial litigation expense, additional operational expense, and other damages in an amount to be proven at trial, but in any event in excess of $100,000.[1]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Allergan, Inc., and Allergan Sales, LLC prays for the following relief against Defendants:

1.     For judgment in favor of Allergan that Defendants have engaged in attempted civil extortion in violation of California Penal Code §§ 519 *et seq*.;

2.     For judgment in favor of Allergan that Defendants have violated California's unfair competition law, codified at Bus. & Prof. Code §§ 17200 *et seq*.;

3.     For judgment in favor of Allergan that Defendants' filing and maintenance of an objectively baseless IPR constitutes malicious prosecution under California law;

4.     For a permanent injunction prohibiting Defendants, including their officers, agents, employees, and all persons acting in concert or participation with them who receive actual notice of the Court's Order, from pursuing the objectively baseless IPR petition that Defendants filed against Allergan's '149 patent or any other IPR petitions against Allergan;

5.     For a permanent injunction prohibiting Defendants, including their officers, agents, employees, and all persons acting in concert or participation with

---

[1] Allergan recognizes that a claim for malicious prosecution requires that the objectively baseless IPR have concluded in its favor.  However, given PTAB's statutory timeline for deciding an IPR – 6 months from filing for the institution decision or 18 months from filing for a final decision – Allergan thought it judicially economical and prudent to allege the cause of action now rather than have to file a separate, subsequent lawsuit on that claim alone.

them who receive actual notice of the Court's Order, from committing additional acts of attempted civil extortion, civil extortion, malicious prosecution and/or additional acts that violate California's unfair competition law;

6.      For an award of restitutionary damages;

7.      For an award to Allergan of its reasonable attorneys' fees; and

8.      For such other and further relief in law or in equity to which Allergan may be justly entitled.

/ / / / /

/ / / / /

/ / / / /

**COMPLAINT FOR CIVIL EXTORTION AND UNFAIR BUSINESS PRACTICES ARISING FROM U.S. PATENT LAWS**

**Case No.**

1

## JURY DEMAND

2

Allergan demands trial by jury for all issues so triable.

3
Dated:  June 19, 2015                 FISH & RICHARDSON P.C.

4
By:  */s/ Michael A. Amon*
_____

5
Michael A. Amon
amon@fr.com
6
FISH & RICHARDSON P.C.
555 West Fifth Street, 31st Floor
7
Los Angeles, California 90013
Tel:  (213) 533-4240/Fax: (877) 417-2378
8

9
Jonathan Singer
singer@fr.com
10
FISH & RICHARDSON P.C.
12390 El Camino Real
11
San Diego, CA 92130
Tel.: (858) 678-5070/ Fax: (858) 678-5099
12

13
John M. Farrell (SBN 99649)
farrell@fr.com
14
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
15
Redwood City, California  94063
Tel:  (858) 678-5070/Fax:  (858) 678-5099
16

17
William B. Mateja (To be admitted *Pro Hac Vice*)
18
mateja@fr.com
FISH & RICHARDSON P.C.
19
1717 Main Street, Suite 5000
Dallas, Texas 75201
20
Tel: (214) 747-5070/Fax: (214) 747-2091

21
Susan M. Coletti (To be admitted *Pro Hac Vice*)
22
coletti@fr.com
FISH & RICHARDSON P.C.
23
222 Delaware Ave., 17th Floor
PO Box 1114
24
Wilmington, Delaware 19801
Tel: (302) 652-5070
25

26
Attorneys for Plaintiff Allergan, Inc., and
Allergan Sales, LLC
27

28

COMPLAINT FOR CIVIL EXTORTION AND UNFAIR BUSINESS PRACTICES ARISING FROM U.S. PATENT LAWS
Case No.