# EXHIBIT A

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

http://www.wsj.com/articles/patent-death-squads-vs-innovation-1433978591

OPINION | COMMENTARY

# 'Patent Death Squads' vs. Innovation

The Patent Trial and Appeal Board was supposed to make the system better. It hasn't.



PHOTO: GETTY IMAGES

By **PETER J. PITTS**
June 10, 2015 7:23 p.m. ET

When Ultratec, a manufacturer of closed-captioned phones for the deaf, realized that a rival had created a knockoff using its patented technology, the company filed a patent-infringement lawsuit. A Wisconsin federal jury ruled for Ultratec in October, ordering rival Sorenson Communications to pay $44 million in damages.

But Ultratec may never receive a cent. In March a little-known but hugely powerful federal body called the Patent Trial and Appeal Board (PTAB) invalidated Ultratec's patents, on grounds that the designs were too obvious to be patentable.

The PTAB, created by the 2011 America Invents Act, was intended to strengthen the patent system. Lawmakers hoped to avoid the need for patent lawsuits by giving patent holders and challengers a quick and inexpensive way to resolve disputes as an alternative to the courts.

But the board uses looser standards than a federal court to evaluate a patent's legitimacy. Courts assume that a patent is valid until a challenger provides "clear and convincing" evidence to the contrary. The PTAB requires only that challengers show that it's more likely than not (i.e., a "preponderance of the evidence") that a patent is too broad.

In recent months the board has overturned patents on a computer memory technology, a popular videogame, and a system for monitoring car tires. The PTAB has invalidated at least one "claim"—or part—in almost 80% of the patents it has ruled on, according to a study in the University of Chicago Law Review. Some patent experts such as Randall Rader, former chief judge at the U.S. Court of Appeals for the Federal Circuit, have referred to the 300-odd administrative judges, attorneys and legal aids on the board as "patent death squads."

Patent challengers have jumped at the chance to exploit the board's lax standards. Since it began to operate in September 2012, the PTAB has received more than 2,600 patent challenge requests—three times more than it expected.

Many of these challenges—such as one against Combigan, an eye-drop medicine that prevents blindness in patients with glaucoma—seek to overturn patents that district courts have already upheld. In many other cases, the patents have also been challenged in federal courts—but courts have stayed the litigation until the PTAB has ruled. The patent may be invalidated without facing a court's stricter standard.

The PTAB could devastate innovation-intensive industries. Consider pharmaceutical developers, which spend about $51 billion a year researching new treatments. But less than 12% of drugs that reach clinical trials ever make it to market.

Patents give firms the financial incentive to fund challenging research and development projects. In the event that a huge upfront investment results in a popular new product, the developer can recoup its costs in sales.

The PTAB jeopardizes this process. Since an overturned patent means that rival companies could create knockoff products, firms will lose the confidence that they'll reap the rewards of innovation.

Some financiers have started using the PTAB to make a quick buck. Kyle Bass is a hedge-fund manager, not a pharmaceutical developer, but he recently challenged six drug patents. His strategy, which has been widely reported, is to bet that the challenges would drive down the patent owners' stock prices.

The strategy is working. Early this year Mr. Bass challenged Acorda

Therapeutics' patent on Ampyra, a medicine that uses a re-engineered bird poison to help multiple sclerosis patients walk. The claim: Medical experts would have been able to deduce the effectiveness and proper dosing of the re-engineered molecule. The challenge caused the company's stock price to drop almost 10%.

If hedge funds and copycats continue to take advantage of the PTAB's bias against patent holders, it will choke off funding for lifesaving medicines.

The Patent Trial and Appeal Board will make it harder to create the products that improve lives and fuel the economy. To avoid this dangerous outcome, Congress has to reform the PTAB so that it operates under the same standards as a regular court.

*Mr. Pitts, a former FDA associate commissioner, is president of the Center for Medicine in the Public Interest.*

Copyright 2014 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.