# EXHIBIT G

## BloombergBusiness

# Hedge Funds Found a New Way to Attack Drug Companies and Short Their Stock

by Susan Decker and Caroline Chen

March 20, 2015 — 2:00 AM PDT



Photographer: Brent Lewin/Bloomberg

Drugmakers are getting more and more nervous that hedge funds have found a way to make money by putting their patents in jeopardy.

Taking advantage of new rules created by Congress three years ago, hedge funds have increasingly been filing challenges to pharmaceutical patents. Some may be angling for payouts to drop their claims, while others are shorting the stock, betting that the manufacturers' shares will plummet.

Ex. G - Page 57

Activist investor Kyle Bass sent a shudder through the drug industry earlier this year by embarking on a patent-challenging strategy. Now a New York hedge fund, Ferrum Ferro Capital LLC, has made an even more brazen move by seeking to invalidate an Allergan Inc. patent that has already been upheld in court. Neither investment firm has said whether it's betting against specific stocks.

The Allergan case has become a rallying cry for companies calling on Congress to alter rules that make it easier to get patents tossed by the U.S. Patent and Trademark Office than in the courts.

"When we developed these proceedings, we never thought people would use them this way, in an effort to move stock or as an investment vehicle," said Bernard Knight, the former general counsel for the patent office, who was there when new rules for challenging patents were written.

A patent office review costs $23,000 to file, and the whole process is a fraction of the millions of dollars in legal fees a challenger would spend in a civil suit. Congress created the process in 2012 as part of a sweeping overhaul of the U.S. patent system, designed to counteract what was seen as an overabundance of patents being awarded.

Cumbersome System

The agency's review process replaced a long and cumbersome system that wasn't used by third parties very much. Now it's used a lot: While the patent

Ex. G - Page 58

office had expected to get about 600 petitions, instead 3,000 have been filed since September 2012.

"It's an expedient and relatively inexpensive means to address patent assertions," said Brian Oaks of Baker Botts in Austin, who successfully invalidated eight telecommunications patents asserted against a client. "It isn't simply a specialized district court determining validity. It's administrative law judges at the patent office looking to see if they got it right in the first place."

The legislation had an unexpected consequence: Hedge funds, which didn't have the right to challenge patents in court, now had a venue to bring such cases.

Patent Killer

"It is very effective at killing patents," said Hans Sauer, deputy general counsel for the Biotechnology Industry Organization. "It's easier to kill patents in these proceedings than in district court. At the end of the day, I don't know how much that has to do with patent quality or fairness."

The mere filing of a petition is no guarantee the patent office will invalidate a patent owner's rights to an invention, or even consider the case. In the past three months, the agency has agreed to hear only 70 percent of the petitions it's received; for bio-related petitions the number is 62 percent, said Michael Sander, founder of Docket Alarm Inc., which maintains statistics on the Patent Trial and Appeal Board, as the patent agency's review panel is known.

Ex. G - Page 59

"It doesn't matter what your motivation is," Knight said. "If you pay the fee and you've properly filed your petition, you can go ahead and file it. You wouldn't bother unless you have something to gain or nothing to do with your time."

'Multiple Pathways'

Drugmakers only have anecdotal reports of third parties asking for money to drop a patent challenge. In other industries, the practice has led to at least one lawsuit. Chinook Licensing LLC said in a lawsuit it was threatened with a patent challenge by Iron Dome LLC unless it gave the company three transferable licenses. A judge dismissed the suit after Iron Dome argued that it had the right to make a settlement offer and that a demand letter can't be "a crime of extortion."

Ferrum Ferro's 33-year-old founder Kevin Barnes won't say how his firm will profit from challenging Allergan's patent for glaucoma drug Combigan. He only said that he sees "multiple pathways to monetization."

Questions about outsiders challenging patents are "a distraction from the core public policy issue of monopolistic pricing for branded pharmaceuticals with low-quality patents," he said.

The pharmaceutical and biotech industries don't agree. The petition against Allergan, after it's been upheld by the courts, is "illustrative of something that's out of kilter," Sauer said.

Prominent User

Allergan's patent was upheld only because the courts used a more stringent standard of review, Barnes said. The impact of Ferrum Ferro's patent challenge to the drugmaker's stock was minimal. Combigan and two other treatments generated only $515.4 million of the company's $7.2 billion in sales last year. And Allergan, also known as the maker of Botox, was acquired this week by Actavis Plc for $70.5 billion.

Bonnie Jacobs, a spokeswoman for Allergan, said the company had no comment on the petition.

While Ferrum Ferro may be pushing the envelope by challenging a patent that was upheld in court, Bass's Hayman Capital Management has been the most prominent user of the hedge-fund strategy. Bass has pledged to challenge patents on numerous medications, accusing the drugmakers of misusing the patent system to keep drug prices high and low-cost copies away from consumers.

Bass declined to comment for this story and, in particular, on whether he is shorting the stock.

Stock Drops

His first petitions targeted two of the five patents covering multiple sclerosis drug Ampyra, which accounts for 91 percent of the revenue of Acorda Therapeutics Inc. Acorda's stock dropped after each of the filings: by 9.7 percent on Feb. 10 and 4.8 percent on Feb. 27.

A variation of Ampyra's active ingredient has been around for almost 100 years, and the patents don't cover anything new, Bass's Coalition for Affordable Drugs said in its petitions.

Acorda declined to comment.

The call for Congress to alter the rules puts drugmakers at odds with some technology companies, which say the new process has been a cheap and efficient way to get rid of nuisance lawsuits and "patent trolls" -- a pejorative term for firms that buy patents with the goal of suing to extract settlements.

For companies like Apple Inc. and Google Inc., which get sued the most in the U.S., the reviews are a counterbalance to the courts in the Eastern District of Texas, now No. 2 for patent disputes, which is where many patent-licensing firms sue because of its reputation for being favorable to patent owners.

12 Percent

Some 1,675 petitions were filed at the patent office in 2014, and two-thirds of them were in the high-tech fields. Medical-related petitions accounted for 12 percent, according to Unified Patents, which pools the resources of tech companies to fend off patent claims.

The bulk of the health-related petitions are by generic-drug companies. Apotex Inc. and Mylan NV were the top challengers, according to Docket Alarm's Sander, who is also a lawyer with Kenyon & Kenyon in New York.

Ex. G - Page 62

Case 8:15-cv-00992-JAK-PLA   Document 1-7   Filed 06/19/15   Page 8 of 8   Page ID #:88

Life sciences companies are different than technology companies in that a challenge to one or two of their patents can become an "existential threat," Sauer said. "You don't have that with a tech company."

A U.S. appeals court has upheld the agency's rules for how the reviews are conducted, though on March 18 patent office Director Michelle Lee said her office is working to make changes based on feedback from users and the patent judges.

"The agency is open to considering changes to ensure the most effective and fair" trials in compliance with the law, Lee said. "We don't claim we have created a perfect system on our first try."