Marc J. Randazza (California Bar No. 269535)
D. Gill Sperlein (California Bar No. 172887)
RANDAZZA LEGAL GROUP
345 Grove Street
San Francisco, CA 94102
Telephone: 415-404-6615
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Defendant,
*Ferrum Ferro Capital, LLC, and Kevin Barnes*

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ALLERGAN, INC., ALLERGAN SALES, LLC, | Case No. 8:15-CV-00992-JAK-PLA |
| Plaintiff(s), | **DEFENDANT KEVIN BARNES' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CIVIL PROCEDURE § 425.16** |
| vs. | |
| FERRUM FERRO CAPITAL, LLC; KEVIN BARNES, | **Date:** November 9, 2015 |
| Defendants. | **Time:** 8:30 AM |
| | **Judge:** Hon. John A. Kronstadt |
| | **Courtroom:** 750, 7th Floor |

**TO THE HONORABLE COURT AND TO ALL PARTIES**:

PLEASE TAKE NOTICE that on November 9, 2015 at 8:30 A.M., or as soon thereafter as this matter may be heard, before the Honorable John A. Kronstadt, in Courtroom 750 of the United States Courthouse for the Central District of California, Western Division,

located at 255 East Temple Street Los Angeles, CA 90012, Defendants Ferrum Ferro Capital, LLC and Kevin Barnes will and hereby do move this Court to strike Plaintiffs' Complaint under California Code of Civil Procedure § 425.16 – better known as California's "anti-SLAPP" statute.

Pursuant to Local Rule 7-3, on July 30, 2015 counsel for Defendants Ferrum Ferro Capital, LLC and Kevin Barnes, D. Gill Sperlein, called counsel for Plaintiffs Allergan, Inc. and Allergan Sales, Inc., in an attempt to confer regarding this motion. Counsel were unable to reach a resolution other than to the date for the hearing of the motion.

This motion is based upon the following Memorandum of Points and Authorities, any exhibits filed therewith, the Request for Judicial Notice and its exhibits filed contemporaneously herewith, the complete files and records in this action, and upon such oral and documentary evidence as may be allowed at the hearing on this motion.

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: August 10, 2015          Respectfully Submitted,

RANDAZZA LEGAL GROUP

/s/ Marc J. Randazza
Marc J. Randazza, Esq.
California Bar No. 269535
D. Gill Sperlein, Esq.
California Bar No. 172887
Randazza Legal Group
345 Grove St
San Francisco, CA 94102

Attorneys for Defendants,
Ferrum Ferro Capital, LLC, and
Kevin Barnes

Notice of Motion

1  Marc J. Randazza (California Bar No. 269535)
   D. Gill Sperlein (California Bar No. 172887)
2  RANDAZZA LEGAL GROUP
   345 Grove Street
3  San Francisco, CA 94102
   Telephone: 415-404-6615
4  Facsimile: 305-437-7662
   ecf@randazza.com
5
6  Attorneys for Defendant,
   *Ferrum Ferro Capital, LLC, and Kevin Barnes*
7
8
9         **IN THE UNITED STATES DISTRICT COURT**
10             **CENTRAL DISTRICT OF CALIFORNIA**
11
12  ALLERGAN, INC., ALLERGAN          Case No. 8:15-CV-00992-JAK-PLA
    SALES, LLC,
13
14         Plaintiff(s),            **MEMORANDUM OF POINTS
                                     AND AUTHORITIES IN SUPPORT OF
15      vs.                          DEFENDANT KEVIN BARNES'
                                     SPECIAL MOTION TO STRIKE
16                                   UNDER CALIFORNIA CIVIL
    FERRUM FERRO CAPITAL, LLC;       PROCEDURE § 425.16**
17  KEVIN BARNES,
18
           Defendants.
19                                   **Date:** November 9, 2015
20                                   **Time:** 8:30 AM
21                                   **Judge:** Hon. John A. Kronstadt
22                                   **Courtroom:** 750, 7th Floor
23
24
25
26
27
28

**Table of Contents**

1. INTRODUCTION ..................................................................................1

2. LEGAL STANDARDS ..........................................................................3

3. ARGUMENT .......................................................................................4

   *3.1.  This Action Arises from Defendants' Protected Activity* ...........................4

      3.1.1. Ferrum Ferro's IPR petition Is Clearly Protected Conduct under the Anti-SLAPP Statute. ....................................................................5

      3.1.2. Plaintiffs' Complaint Is Based on Defendants' Right to Petition ...........8

   *3.2.  Plaintiffs Cannot Demonstrate a Probability of Success on their Claims* 11

      3.2.1. Plaintiffs Cannot Succeed on their Attempted Civil Extortion Claim. 11

      3.2.2. Plaintiff Cannot Succeed on Its Unfair Competition Claim. ...............15

      3.2.3. Plaintiffs Cannot Succeed on Their Malicious Prosecution Claim ......22

4. CONCLUSION ..................................................................................24

Memorandum of Points and Authorities

**TABLE OF AUTHORITIES**

**CASES**

*Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286 (Fed. Cir. 2013)........6, 10, 12, 18, 23, 24

*Allergan, Inc. v. Sandoz Inc.*, 818 F. Supp. 2d 974 (E.D. Tex. 2011) ..........................12

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ................................................................7

*Bertero v. National General Corp.*, 13 Cal. 3d 43, 50 (1974) ...................................26

*Birkner v. Lam*, 156 Cal. App. 4th 275 (2007) ...............................................................11

*Blackburn v. Brady*, 116 Cal. App. 4th 670, 712 (2004) ...............................................12

*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 169 (Cal. App. 4th Dist. 2001) ............................................................20

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999) ..................................................................................20

*Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652 (1996).................8

*City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2008)....................................................9

*Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1052 (2007) .7

*Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 883 (2011) ..................................................................................................15

*In Re Episcopal Church Cases*, 45 Cal. 4th 467, 477 (2009) ......................................9

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) .................................................................9

*Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th 1532, 1537 (2006)11

*Mello v. Great Seneca Fin'l Corp.*, 526 F. Supp. 2d 1024, 1029 (C.D. Cal. 2007).....8

*Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011)..................................13

*Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. 2009) ..........17

*Panakosta Partners, LP v. Hammer Lane Mgmt., LLC*, 199 Cal. App. 4th 612, 635, (2011) ..................................................................................................11

*Price v. Stossel*, 590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008)......................................7

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1160 (Cal. App. 1st Dist. 2000) .......20

*Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 806 (Cal. Ct. App. 2002) ........7

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1013
(N.D. Cal. 2007) ................................................................................................9

*Tjaden v. H.S.B.C. Bank USA N.A.*, 2015 U.S. Dist. LEXIS 49023, *27 (S.D. Cal. Apr. 14,
2015) ...............................................................................................................16

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1569
(2009) ...........................................................................................................7, 8

## STATUTES

35 U.S.C. § 311 ..........................................................................................5, 18

35 U.S.C. § 314(a) .............................................................................................13

Cal Bus & Prof Code § 17538.5 .........................................................................20

Cal. Code Civ. Proc. § 425.16 ......................................................................5, 7, 8

Cal. Code Civ. Proc. § 425.16(e)(2) ...................................................................15

Cal. Pen. C. § 518 ...............................................................................................16

Cal. Pen. C. § 519 ...............................................................................................16

Civ. L. R. 16-15.1 ...............................................................................................25

Fed. R. Evid. 408 ................................................................................................25

## OTHER AUTHORITIES

5 Witkin, *Summary of California Law* (10th ed. 2005) Torts, § 486 ..........................26

Elizabeth P. Offen-Brown, *Forum Shopping and Venue Transfer in Patent Cases:
Marshall's Response to TS Tech and Genentech*, 25 BERKELEY TECH. L.J. 61, 71
(2010) ...........................................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

The only reason Plaintiffs Allergan, Inc., Allergan Sales, LLC (hereinafter collectively referred to as Allergan) brought this action was to retaliate against Defendants Ferrum Ferro Capital, LLC and Kevin Barnes (hereinafter referred to collectively as "FFC") for petitioning the United States Patent and Trademark Office's ("USPTO's") Patent Trial & Appeal Board ("PTAB") to invalidate a patent – as is its right under the law.[1] *See* 35 U.S.C.A. § 311.

Allergan retaliated by filing this case in order to punish Defendants for exercising their right to petition the U.S government – specifically, the U.S. Patent Office. Thus, Allergan's case is strategic litigation against public participation (commonly referred to using the acronym "SLAPP.") Each of the claims set forth in Allergan's SLAPP Complaint relies on the premise that FFC brought a challenge to Allergan's patent. Allergan should defend that case – not seek to multiply the proceedings with a SLAPP suit.

Because Allergan brought this SLAPP action as retaliation for FFC engaging in the fundamental First Amendment right to petition the government, California's anti-SLAPP law applies. *See* Cal. Code Civ. Proc. § 425.16. Since there are sound legal arguments to support FFC's position that Claim 4 of the '149 Patent is non-patentable as obvious, Allergan cannot demonstrate a probability of prevailing, as

---

[1] Ferrum Ferro in particular seeks to deem the 4th claim of Allergan's '149 Patent unpatentable using the process of an Inter Partes Review (IPR).

it must. Specifically, Allergan cannot demonstrate that FFC's challenge is baseless and brought in bad faith. FFC's IPR challenge is demonstrably well-taken. A reasonable person reviewing all the facts could conclude that claim 4 of the '149 patent is obvious and therefore nonpatentable. Most notably, after carefully reviewing evidence as presented in district court, an esteemed judge of the Federal Circuit, in a strongly worded opinion, stated that claim 4 of the '149 patent is indeed obvious and therefore nonpatentable and invalid. *See Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1296 (Fed. Cir. 2013) (Dyk, dissenting); *see also* Req. for Judicial Not., Ex. A. Accordingly, any notion that Ferrum Ferro's *Inter Partes* action is brought in bad faith is clearly unsupportable. Perhaps this unpatentability opinion is only the opinion of one Federal Circuit judge – but it certainly is enough to say that Ferrum Ferro's case is valid, especially in light of the lower burden of proof for an IPR.

Moreover, as further evidence of the validity of FFC's IPR petition, Allergan attempted to bring this same cause of action against FFC as part of the IPR proceeding and was promptly denied by the administrative law judges. (*See* June 15, 2015 email correspondence from PTAB denying Allergan's request for authorization to file a motion for sanctions, attached as **Exhibit A.**) Therefore, this action is arguably already *res judicata*.

Since FFC's IPR challenge is objectively reasonable, Allergan's claims for extortion, unfair business practice, and malicious prosecution all fail.

*/ / /*

## 2.    LEGAL STANDARDS

The Anti-SLAPP Act (Cal. Code Civ. Proc. § 425.16) is a creation of state law, but it applies in federal court. *See Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *see also Price v. Stossel*, 590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008) ("[I]t is beyond dispute that the California anti-SLAPP motion is available in federal court.").

The Legislature enacted § 425.16 to protect defendants from interference with the exercise of their constitutional rights, *particularly* the right to petition the government, as Defendants did just before this case, and in retaliation Allergan brought this suit. *See Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1052 (2007); *see also Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 806 (Cal. Ct. App. 2002) ("The goal is to eliminate meritless or retaliatory litigation at an early stage of the proceedings"). In this case, Defendants' Special Motion to Strike challenges the legal sufficiency of Plaintiffs' allegations, as well as Plaintiffs' inability to substantiate the state law claims raised in the Complaint.

Courts evaluate anti-SLAPP motions in two steps. First, in order to establish the applicability of § 425.16, a defendant must demonstrate that his actions, as targeted in the complaint, were made in furtherance of the defendant's right to petition or right to free speech. *See* Cal. Code Civ. Proc. § 425.16(b). The focus is on the substance of the lawsuit; whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. *See World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1569 (2009). To determine

RANDAZZA | LEGAL GROUP

whether the "arising from" requirement is met, courts look to "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.*

Once a defendant has made a prima facie showing that the complaint targets protected activity, the burden shifts to the plaintiff who must demonstrate a probability of prevailing on their claims. To carry this burden, the plaintiff must demonstrate that the Complaint is both legally sufficient and supported by facts able to sustain a judgment. *See Mello v. Great Seneca Fin'l Corp.*, 526 F. Supp. 2d 1024, 1029 (C.D. Cal. 2007). If the plaintiff cannot do so, the Court must strike the complaint. The Plaintiff in this case cannot, since all of the claims fail as a matter of law.

## 3.   ARGUMENT

### 3.1.   This Action Arises from Defendants' Protected Activity

California's anti-SLAPP statute provides that a "cause of action arising from any act of that person in furtherance of the person's right of petition . . . shall be subject to a special motion to strike . . ." *See* Cal. Code Civ. Proc. § 425.16(b)(1) In determining whether a defendant makes a successful showing on the first prong of the Anti-SLAPP analysis, courts do not look to the particular cause of action pled by the plaintiff, but rather consider whether the plaintiff brought the suit based on the exercise of the defendant's right to petition as protected under the statute. *See Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652 (1996) (holding that, with an Anti-SLAPP motion, the "nature or form of" the action is "not what is critical but rather that it is against a person who has exercised

certain rights"). Courts typically look to "the 'gravamen or principle thrust' of the plaintiff's claim to determine whether they arise from the defendant's constitutionally protected petitioning or free speech rights." *In Re Episcopal Church Cases*, 45 Cal. 4th 467, 477 (2009). A defendant may take advantage of the Anti-SLAPP statute if the "defendant's conduct underlying the plaintiff's cause of action" was "itself" in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2008). In addition, California's Anti-SLAPP statute protects direct petitioning of the government and petition-related statements and writings, whether or not the statement is made in connection with a public issue. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). Further, where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to California's anti-SLAPP statute unless the protected activity is merely incidental to the unprotected conduct. *See Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1013 (N.D. Cal. 2007).

### 3.1.1. Ferrum Ferro's IPR petition Is Clearly Protected Conduct under the Anti-SLAPP Statute.

FFC is a venture fund focused on the strategic deployment of capital towards socially beneficial ends. One of the company's core social interests is expanding the availability of lower-cost pharmaceutical products for senior citizens suffering from debilitating medical conditions such as glaucoma. While FFC is currently not directly in the business of distributing pharmaceuticals, it looks for opportunities where it can apply its capital to create opportunities to promote its core principles while still obtaining a return on its capital.

Allergan presently holds the exclusive rights over its tellingly named drug, Combigan, which merely combines two other drugs (brimonidine and timolol) to treat glaucoma. As a result, other generic producers of similar brimonidine/timolol solutions are barred from offering lower-cost drugs to patients in need. *See Sandoz Inc.*, 726 F.3d at 1296; *see also* Req. for Judicial Not., Ex. A.

Under a belief[2] that Allergan's Combigan patents are obvious and therefore invalid, FFC filed an Inter Partes Review of U.S. Patent No. 7,030,149 (hereinafter the "'149 patent") as the America Invents Act, 35 U.S.C. § 311 permits them to do. *See generally* 35 U.S.C. § 311. The Federal Circuit Court of Appeals has already issued a decision finding that all of Allergan's remaining patents are invalid as obvious. *See Sandoz Inc.*, 726 F.3d 1286; *see also* Req. for Judicial Not., Ex. A.

35 U.S.C. § 311 reads in part, "a person who is not the owner of a patent may file with the Office a petition to institute an *inter partes* review of the patent." 35 U.S.C. § 311(a). If the IPR proceeding is successful, Allergan's artificial monopoly on this market would be lifted, allowing other generic producers, including producer(s) financed by FFC, to make and distribute affordable solutions to patients seeking a cost efficient solution to their ailment, thereby satisfying Ferrum Ferro's core missions of reducing the cost of pharmaceutical products for senior citizens suffering from debilitating medical conditions.

---

[2] A belief supported by at least one Federal Circuit judge. *See Sandoz Inc.*, 726 F.3d at 1296 (Dyk, dissenting); *see also* Req. for Judicial Not., Ex. A.

Memorandum of Points and Authorities

RANDAZZA | LEGAL GROUP

In direct retaliation for Ferrum Ferro's petition for an *Inter Partes Review*, Plaintiff Allergen filed the present suit alleging attempted civil extortion, unfair competition, and malicious prosecution. In their prayer for relief Allergen seeks, *inter alia*, a permanent injunction barring FFC's "officers, agents, employees, and all persons acting in concert" from pursuing the present *Inter Partes* Review and **ANY FUTURE** petitions. Dkt. No. 1 at 15, ¶4. Plaintiffs filed this action with the specific intent of censoring Ferrum Ferro's petition, or to pressure Ferrum Ferro into dropping its case. Their motive? To protect Allergan's artificial monopoly that has allowed it to extract a premium price for the mere act of combining two known medications into a single solution. Using threats of civil litigation as a means of intimidating people from petitioning their government as Plaintiffs has done here is the precise conduct from which California's Anti-SLAPP statute seeks to shield speakers. *See Panakosta Partners, LP v. Hammer Lane Mgmt., LLC*, 199 Cal. App. 4th 612, 635, (2011) (holding the right of petition encompasses the filing of a legal action); *see also Birkner v. Lam*, 156 Cal. App. 4th 275 (2007) (holding the constitutional right to petition includes the basic act of filing litigation or otherwise seeking administrative action); *Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th 1532, 1537 (2006) (holding the protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation).

*/ / /*

### 3.1.2. Plaintiffs' Complaint Is Based on Defendants' Right to Petition

In the context of a motion to strike a complaint under the anti-SLAPP statute, the critical consideration is whether the cause of action is based on the defendant's protected petitioning activity. *See Blackburn v. Brady*, 116 Cal. App. 4th 670, 712 (2004).

Even before FFC's petition, Plaintiffs used litigation as a tool to ensure their anti-competitive model remains intact. In 2011, they sued half a dozen companies that sought to produce generic combination eye drops for the treatment of glaucoma. *See Allergan, Inc. v. Sandoz Inc.*, 818 F. Supp. 2d 974 (E.D. Tex. 2011) *aff'd in part, rev'd in part*, 726 F.3d 1286 (Fed. Cir. 2013); *see also* Req. for Judicial Not., Ex. B. Those defendants countersued, claiming that Allergan's patents were invalid. *Id.* At the Court of Appeal, the defendants prevailed on invalidating all but one of Allergan's patents. *See Sandoz Inc.*, 726 F.3d 1286; *see also* Req. for Judicial Not., Ex. A. However, the defendants were unsuccessful because they were required to prove by **clear and convincing** evidence that claim 4 of the '149 patent was obvious. *Id.* Therefore, Allergan narrowly escaped invalidation under this exacting standard. (The *inter partes* standard is lower.) Notably Allergan brought the original case in the Marshall Division of the Eastern District of Texas, a notoriously plaintiff-friendly haven for patent infringement suits. *See* Elizabeth P. Offen-Brown, *Forum Shopping and Venue Transfer in Patent Cases: Marshall's Response to TS Tech and Genentech*, 25 BERKELEY TECH. L.J. 61, 71 (2010). As noted above, on appeal, Justice

Dyk of the Federal Circuit issued a strongly worded dissent that favors FFC's position.

A large part of the success Allergan found in their past patent infringement litigation can be attributed to the standard of review federal courts require patent challengers to meet. This is because in normal civil litigation the issue is evaluated under a clear and convincing evidence standard. *See Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011). However, an *Inter Partes* Review, as FFC presently seeks, requires only that petitioners show "that there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition." 35 U.S.C.A. § 314(a). Understandably, Allergan would prefer to avoid defending its patent in the face of this lower standard of proof. Allergan understands there is a statistically significant probability that FFC will prevail on its claims. Accordingly, to retaliate for FFC's petition, and to bring collateral pressure on FFC to drop its case, Allergan seeks to distort the law and allege claims that have no basis in order to prevent the *Inter Partes* Review from proceeding. *See* Complaint at 15, ¶4 (request for a permanent injunction prohibiting FFC from pursuing the IPR petition filed against Allergan's '149 patent and **any other IPR petitions against Allergan**) (emphasis added).

Rather than defend the IPR, Allergan followed its usual modus operandi by resorting to aggressive litigation in district court to keep treatments out of the eyes of under-insured patients, while maximizing their own profits. In doing so, Plaintiffs make the extraordinary assertion that petitioning the government for an *Inter*

*Partes* Review constitutes "extortion," "unfair competition," and "malicious prosecution."[3] Such a position is unsupportable and if permitted would gut the relevant provisions of 35 U.S.C. 35 § 311.

Congress explicitly created the right to file an *Inter Partes* Review when it enacted the America Invents Act. Ferrum Ferro therefore has the right to petition the government for review of the '149 patent. The filing of this action is an attempt to interfere with a valid challenge to Allergan's '149 patent. There is no basis for Plaintiffs' claims and their goal is clear; Allergan seeks to stifle FFC's petition for an *Inter Partes* Review. Plaintiffs' claims for civil extortion, unfair business practices, and malicious prosecution arise directly out of FFC filing an *Inter Partes* Review and then corresponding with Plaintiffs about the petition. While Plaintiffs mischaracterize the nature of this petition and the statements made in the correspondence, the statements are nonetheless protected, as they are written statements in connection with an issue under review by an official proceeding authorized by law. *See* Cal. Code Civ. Proc.

---

[3] It is ironic that Allergan calls Defendants' actions "extortion," when Allergan itself makes its profits by trying to artificially inflate the costs of glaucoma treatments. Allergan combined two drugs that already existed, and despite the obviousness of this "invention," if a suffering patient can't afford Allergan's "patent premium" then as far as Allergan is concerned, that patient should simply go blind. Despite this being the true narrative here, Allergan has the audacity to use the word "extortion" to describe Defendants' quest to bring these treatments to under-insured patients for a lower cost. Perhaps the senior citizens currently unable to see because Allergan blocks their ability to afford sight-saving treatments would have another word for it.

§425.16(e)(2); *see also Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 883 (2011).

Plaintiffs' SLAPP Complaint leaves no doubt as to the essential link between FFC's petitioning the government for *Inter Partes* Review and Plaintiffs' claims for relief. Each claim relies on the fact that FFC petitioned the government by filing its IPR petition and discusses the petition in detail. The link between Defendants' filing of the IPR and Plaintiffs' claims is so direct, that Plaintiffs argue that the IPR application provides a basis for subject matter jurisdiction even though all of its claims are based entirely in state law. Complaint, Dkt. No. 1, at ¶¶6-8. Therefore, Plaintiffs themselves recognize the link between the Defendants' actions under federal patent law (i.e. the filing of the IPR petition) and Plaintiffs' claims for relief.

Since Plaintiffs' claims were brought as retaliation against FFC for petitioning the government, Allergan must demonstrate a probability of prevailing on the merits. It cannot, and the Court must strike Allergan's claims.

### 3.2. Plaintiffs Cannot Demonstrate a Probability of Success on their Claims.

#### 3.2.1. Plaintiffs Cannot Succeed on their Attempted Civil Extortion Claim.

Plaintiffs cannot succeed on their attempted civil extortion claim because even if all the factual allegations set forth in the Complaint are taken as true, Plaintiffs have not stated a claim upon which relief could be granted.

There is no private cause of action for extortion under federal law. *See Tjaden v. H.S.B.C. Bank USA N.A.*, 2015 U.S. Dist. LEXIS 49023,

*27 (S.D. Cal. Apr. 14, 2015). Extortion under California Penal Code § 518 is defined as "obtaining property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." Cal. Pen. C. § 518. Plaintiffs do not allege that FFC used any force against them, and FFC is not a public officer, so only the "wrongful use of . . . fear" language could possibly apply.

Cal. Pen. Code § 519 identifies the types of threats that can induce fear for the purpose of extortion and reads,

> Fear, such as will constitute extortion, may be induced by a threat of any of the following: 1) To do an unlawful injury to the person or property of the individual threatened or of a third person; 2) To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime; 3) To expose, or to impute to him, her, or them a deformity, disgrace, or crime; 4) To expose a secret affecting him, her, or them or 5) To report his, her, or their immigration status or suspected immigration status.

Cal. Pen. C. § 519. Allergan does not allege that FFC has 2) accused it of a crime, 3) exposed or imputed to it a deformity, disgrace, or crime, 4) exposed a secret affecting Allergan, or 5) threatened to report Allergan's immigration status. Thus, the ultimate question is: can Allergan demonstrate a probability of prevailing by showing that FFC wrongfully obtained Allergan's property by threatening to do an unlawful injury to Allergan or Allergan's property? While

California Penal Code Section 523 provides for criminal sanctions even when no property has exchanged hands, the alleged facts are insufficient even to establish liability under that section. *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. 2009) ("The Court finds that . . . a cause of action [for civil extortion], either at law or at equity, may be properly found in section [Cal. Penal C. §] 523, which proscribes extortion notwithstanding that the defendant ultimately obtained no money or property by means of his extortionate threats.").

First, an examination of the letter that Allergan placed in the record shows that it only states that FFC believes ". . . Allergan should be given a single opportunity to support FFC's core social and investment interests before other time-barred producers are able to file for joinder in the '149 Patent IPR . . ." and that ". . . FFC is amenable to discussing an immediate and confidential settlement with Allergan." An offer to settle a valid case on any open-ended terms is hardly "extortion."[4] FFC specifically left the language of its letter open ended, because it understood that there might be possible resolutions that it had not even considered.[5] While the extortion statute might apply to a demand for property to be transferred in combination with an unlawful threat, it certainly can't be applied here, where all FFC did was inform a defendant that it

---

[4] Were this the case, then anyone who ever filed a lawsuit and subsequently engaged in settlement discussions would *ipso facto* be engaged in extortion.

[5] However, one of them was not that Allergan would file a baseless SLAPP suit in order to attempt to strong-arm FFC into dropping its *Inter Partes* review.

was open to settlement discussions. Second, extortion requires that Allergan establish that FFC threaten an unlawful injury to it or its property. It may be that successfully invalidating Allergan's '149 patent might be considered (by Allergan) to be an "injury" – but when one party asserts a legal right, that is not a legal "injury." If it were, then prosecutors would be "injuring" defendants by prosecuting them for criminal activity. The America Invents Act confers upon FFC the right to petition for an *Inter Partes* Review. *See* 35 U.S.C. § 311. Exercising that right, FFC petitioned the government to invalidate the '149 patent using the federal law designed for that purpose. Plaintiffs' contention that FFC's application was submitted in an effort to instill fear in Plaintiffs is unsupported, unjustified, and quite bizarre. Moreover, the dissent of Judge Dyk in the *Sandoz* case indicates that the IPR petition is likely to be successful. *See Sandoz Inc.*, 726 F.3d at 1289-90.

Plaintiffs attempt to support their belief that filing an IPR claim amounts to extortion by referring to a Wall Street Journal op-ed article written by a third-party, which is paid to be critical of the IPR process.[6] The article was written by Mr. Peter Pitts, the President of a lobbying group funded by the branded pharmaceutical industry. As such, Pitts has a vested interest in making paid statements against the IPR process. Yet, *this* is the wall against which Allergan rests its arguments? This is nothing more than a paid advertisement by

---

[6] *See* Peter J. Pitts, "'Patent Death Squads' vs. Innovation," THE WALL STREET JOURNAL, Opinion Section, (June 10, 2015), http://www.wsj.com/articles/patent-death-squads-vs-innovation-1433978591.

someone who may not even believe it himself. The only thing more shameful than Allergan using this as "evidence" would be this Court failing to see it for what it is.

Further, commentators may use the word "extortion" to describe any number of administrative or legal procedures. However, "extortion" in Mr. Pitt's use can only be considered to be rhetorical hyperbole; not as a legal analysis of what constitutes extortion under the criminal law or its civil counterparts. Even if it were, this court can do that analysis without the aid of one biased editorial writer who does not even have a law degree. (*See* Peter Pitts' LinkedIn profile, attached as **Exhibit B**.) Peter Pitts' opinion should have no relevance in this proceeding – except to show that if this is the best that Allergan can do, it clearly has no arrows left in its quiver.

### 3.2.2. Plaintiff Cannot Succeed on Its Unfair Competition Claim.

If the underlying act is legal, then one cannot impose a duty to refrain from it through California's Unfair Competition Law (UCL). In other words, in order to set forth a claim for unfair competition, Plaintiffs must identify a predicate violation of law, which they have not. Rather, Allergan relies on a series of accusations which do not support an inference of unfair business practice, much less establish the elements of such an action.

"Where, as here, the Legislature has permitted certain conduct, 'courts may not override that determination' by declaring such conduct to be actionable under Business and Professions Code section 17200." *California Medical Assn. v. Aetna U.S. Healthcare of*

*California, Inc.*, 94 Cal. App. 4th 151, 169 (Cal. App. 4th Dist. 2001) (*citing Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999)). "[W]here the allegedly unfair business practice has been authorized by the Legislature, no factual or equitable inquiry need be made, as the court can decide the matter entirely on the law." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1160 (Cal. App. 1st Dist. 2000) (by authorizing avoidable fuel service charges, Civil Code section 1936, subdivision (m)(2) insulates the reasonableness of such charges from judicial scrutiny). Allergan sets forth a list of allegations intended to support their UCL claim. However, the acts are either specifically allowed by existing law, or they are at a minimum are not prohibited under the law.

For example, as the first act that Allergan offers as evidence that FFC is engaged in unfair business practices, it alleges that FFC uses a mail drop box in connection with running its business. *See* Complaint at ¶75(a). Although California regulates the use of mail drop boxes, it does not prohibit their use. In fact, California regulations explicitly contemplate their use. *See e.g.*, Cal Bus & Prof Code § 17538.5. Although counsel was unable to identify any Delaware statutes governing private mail boxes, common sense indicates that the use of such private mail drop boxes is legal in Delaware as well. Indeed thousands of businesses use mail drop boxes. Some use drop boxes to ensure continuity when the business changes office locations. Others use them to protect trade secrets by preventing the public from knowing where they actually operate. Still others find their use to be a convenient way to ensure that mail is

not lost, to cut down on unwanted junk mail, or to prevent lower level employees from learning information they should not be entrusted with. Allergan does not allege that FFC violates any law regulating the use of private mail drop boxes. Moreover, the FDA form Allergan lifted this FFC mailing address from specifically allows the use of P.O. Boxes and Agents of Service. Allergan's assertion that this is an unfair business practice therefore seems nonsensical, and their inclusion of what they think is a scurrilous photograph of the facility makes their intent questionable. The use of a private mail drop box is certainly not an unfair business practice, and such an allegation is absurd.

Next, Allergan alleges that FFC prepared a false "proposed FDA filing for a hypothetical generic brimonidine tartrate/timolol maleate ophthalmic solution in furtherance of Defendants' attempts to extort Allergan through the guise of a settlement of the IPR proceeding" (Complaint at ¶75 (b)) and "[f]alsely representing to Allergan that Defendants were prepared to 'seek FDA approval via a Paragraph III ANDA filing to produce and market a generic brimonidine tarte/timolol maleate ophthalmic solution with [an unnamed] Contract Manufacturing Partner ('CMP')." Complaint at ¶75 (c). For these assertions, Allergan relies solely on statements made in a March 9, 2015 letter from FFC's external counsel, Mr. Amir Naini of Russ August & Kabat. However, in that letter, Mr. Naini states that, "FFC is prepared to seek FDA approval via a Paragraph III ANDA filing to produce and market a generic brimonidine tartrate/timolol maleate ophthalmic solution with a Contract

Memorandum of Points and Authorities

Manufacturing Parter ("CMP") **upon** the invalidation of the Combigan Orange Book-listed patents." Complaint, Ex D., Dkt. No. 1-4, at 3, ¶4 (emphasis added).   Mr. Naini made it clear, via the proposed Paragraph III as opposed to Paragraph IV FDA ANDA submission, that FFC would not infringe on the '149 patent as long as it was valid. And especially, in the context of asserting legal rights, it is quite common for people to state that they are "prepared" to do something, to mean that they are "willing and able" to take the action. There is nothing unfair or illegal about FFC informing Allergan that it believes Allergan's patent to simply combine two known drugs into a single solution is invalid as obvious, that FFC is challenging the patent through an IPR, and that upon success FFC intends to invest resources to compete with Allergan by bringing to market a generic brimonidine tartrate/timolol solution. FFC has the legal right to engage in these actions and the legal right to inform Allergan and others that it intends to take these actions.

At ¶75 (d) of the Complaint, Allergan alleges that FFC engaged in an unfair business practice by filing an objectively baseless IPR petition for the unlawful purpose of extorting Allergan. Allergan alleges no facts that if true could establish that its IPR petition is baseless. In fact, the IPR petition is well supported. The Court need look no further than the decision of the Federal Circuit Court of appeals in the *Sandoz* case. *See* Req. for Judicial Not., Ex. A.

As Allergan sets forth in its Complaint, it brought a claim under the Hatch-Waxman Act to prevent various competitors from bringing generic versions of Combigan to market. In defending against

Allergan's lawsuit, its competitors argued, in part, that four of Allergan's patents relating to Combigan were invalid as obvious under 35 U.S.C. §103. At the District Court, Allergan was fairly successful. The District Court found that none of the patents were invalid as obvious. However, contrary to Allergan's presentation in the Complaint, the Federal Court of Appeal viewed the matter differently. The Circuit Court reversed the District Court on three of the four patents, finding them obvious and therefore not patentable. As to the fourth patent, the '149 patent, under a clear and convincing standard the Circuit Court found that one of four claims (claim 4) of the '149 patent was not obvious. Moreover, only two of the three judges found claim 4 of the '149 patent nonobvious. Allergan was able to sustain its artificial monopoly, but only by the most narrow victory possible.

Furthermore, Judge Dyk's dissent is compelling. The judges in the majority found that prior art clearly indicated that the concept of using the two drugs in combination was obvious and therefore not patentable. *Sandoz*, 726 F.3d at 1289-90; *see also* Req. for Judicial Not., Ex. A. It was well established that the two active drugs in Combigan could be combined and administered together rather than administering them separately and that combining them and reducing the dose frequency from three or four times per day to twice per day increased patient compliance. *Id*. Claim 4 of the '149 patent stated that, "the daily number of doses of brimonidine be reduced from 3 to 2 times a day *without loss of efficacy*." The majority ruled that Allergan's competitors had not established by

clear and convincing evidence that the benefit of no loss of efficacy was obvious. Therefore, the majority ruled the idea of combining the drugs was not obvious and was patentable. *Id.* at 1294. Dissenting, Judge Dyk wrote:

> The majority concludes, correctly, that the composition claimed in the '463 patent would have been obvious, even though it has the unexpected property that it can be dosed twice a day without a loss of efficacy (specifically, without the appearance of a so-called 'afternoon trough'). Yet the majority affirms the validity of a claim drawn to the method of dosing that same composition twice a day, because the prior art did not disclose that this dosing regimen 'would eliminate the afternoon trough issue.' Maj. Op. 13. I think that the different results as between the claims of the '463 patent and claim 4 of the '149 patent cannot be reconciled.

*Id.* at 1295.

The Court of Appeal's ruling is not binding on the PTAB and the Administrative Patent Judges apply a broader standard for claim interpretation and a lower burden of proof. The majority's opinion appears to be internally inconsistent and the PTAB may well be persuaded by Judge Dyk's well-reasoned position. Moreover, in order to succeed at the PTAB, FFC need only meet a preponderance of the evidence standard, not a clear and convincing standard as required at the district court.

To classify FFC's IPR petition as "objectively baseless" and to suggest that it can support a claim for an unfair business practice claim is clearly reaching, to put it mildly.

Finally, Allergan offers FFC's letter as evidence that it was engaged in unfair business practice because it offered to pursue a mutually beneficial business agreement. Complaint at ¶75(e). In the first instance, settlement discussions may not be used as evidence to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408. Secondly, a willingness to engage in discussions to avoid or resolve conflicts, especially conflicts that could potentially lead to resource-consuming litigation, should not be viewed negatively. Courts should and do encourage parties to settle their differences. The Central District has an entire Alternative Dispute Resolution Department designed to encourage and facilitate settlement. In fact litigants are required to participate in ADR. *See* Civ. L. R. 16-15.1. General Order No. 11-10, sets out the advantages of settling rather than litigating claims. As set forth *supra*, FFC has valid reasons for seeking to invalidate Allergan's '149 patent, and are likely to be successful in that endeavor. Public policy encourages parties to settle disputes. Settlement discussions are not only legal, but they are encouraged. Engaging in settlement discussions cannot be a basis for a UCL claim.

All of the acts of FFC as alleged by Allergan are legal and therefore cannot be the foundation for a UCL claim.  The Claim must be stricken.

/ / /

### 3.2.3. Plaintiffs Cannot Succeed on Their Malicious Prosecution Claim

This is the most obviously sanctionably weak claim. In fact, on the face of the Complaint, Allergan concedes that the claim is invalid.

Allergan admits in its Complaint that an essential element of a malicious prosecution claim under California law is that the proceedings brought against the party claiming malicious prosecution must have been concluded in its favor. Complaint, p. 15, n. 1. On this point Allergan is correct. "To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and *was pursued to a legal termination in his, plaintiff's, favor*; (2) was brought without probable cause; and (3) was initiated with malice." *Bertero v. National General Corp.*, 13 Cal. 3d 43, 50 (1974) (emphasis added; internal citations omitted.) If the action is not terminated in the plaintiff's favor, then there is no cause of action. The IPR proceeding is clearly pending (as admitted by Plaintiffs). This claim must be stricken.

"Although the tort is usually called 'malicious prosecution,' the word 'prosecution' is not a particularly apt description of the underlying civil action. The Restatement uses the term 'wrongful use of civil proceedings' to refer to the tort." 5 Witkin, *Summary of California Law* (10th ed. 2005) Torts, § 486, internal citations omitted. The Judicial Counsel of California Jury Instructions (CACI) list the elements of a Wrongful Use of Proceedings claim as follows:

1. That [*name of defendant*] was actively involved in bringing [or continuing] the lawsuit;

[2. That the lawsuit ended in [*name of plaintiff*]'s favor;]

[3. That no reasonable person in [*name of defendant*]'s circumstances would have believed that there were reasonable grounds to bring the lawsuit against [*name of plaintiff*];]

4. That [*name of defendant*] acted primarily for a purpose other than succeeding on the merits of the claim;

5. That [*name of plaintiff*] was harmed; and

6. That [*name of defendant*]'s conduct was a substantial factor in causing [*name of plaintiff*]'s harm.

Moreover, the instructions specifically state that the law requires the trial judge, rather than the jury, to decide if the plaintiff has proven element number two. The face of the complaint establishes that Plaintiffs cannot establish element number two because the civil proceedings at question have not been concluded at all, much less in Allergan's favor. Allergan states that it thought it "more judicially economical and prudent to allege the cause of action now rather than have to file a separate, subsequent lawsuit on that claim alone," but offers no authority supporting such a position. Complaint p. 15, n.1. If Allergan were truly interested in advancing the principle of judicial economy it would engage FFC at

the IPR proceedings. The result of those proceedings will not only resolve the question of whether Allergan can successfully defend and therefore meet one of the required elements for bringing a malicious prosecution claim, but might also inform Allergan's claims for extortion and unfair business practices, which certainly at this time are not supportable.

Incredibly, Allergan appears to believe it has the ability to look ahead and foresee claims it may have in the future. However, physics and common sense establish that it cannot. There is no question that Allergan's claim for malicious prosecution is not ripe. Allergan brought the claim for malicious prosecution in an attempt to retaliate against FFC, knowing that it could not prove the elements of the claim. The Court must strike this claim along with the other two.

## 4. CONCLUSION

For the reasons set forth above, the Court must strike Plaintiffs' Complaint under California Code of Civil Procedure § 425.16.

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: August 10, 2015      Respectfully Submitted,

RANDAZZA LEGAL GROUP

*/s/ Marc J. Randazza*
Marc J. Randazza, Esq.
California Bar No. 269535
D. Gill Sperlein, Esq.
California Bar No. 172887
Randazza Legal Group
345 Grove Street
San Francisco, CA 94102

Attorneys for Defendants,
Ferrum Ferro Capital, LLC, and
Kevin Barnes

Case No. 8:15-CV-00992-JAK-PLA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 10, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

_____
Employee,
Randazza Legal Group

- 25 -

Memorandum of Points and Authorities